75 A.3d 1214

LINDA KUBERT AND DAVID KUBERT, PLAINTIFFS–APPEL-LANTS, v. KYLE BEST, SUSAN R. BEST, EXECUTRIX OF THE ESTATE OF NICKOLAS J. BEST, DECEASED, DEFENDANTS, AND SHANNON COLONNA, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued May 6, 2013—Decided August 27, 2013.

496

500

Before Judges ASHRAFI, ESPINOSA and GUADAGNO.

*Stephen S. Weinstein* argued the cause for appellants (*Stephen S. Weinstein, P.C.*, attorneys; *Mr. Weinstein,* of counsel and on the brief; *Gail S. Boertzel,* on the brief).

*Joseph J. McGlone* argued the cause for respondent (*McElroy, Deutsch, Mulvaney & Carpenter, L.L.P.*, attorneys; *Mr. McGlone,* of counsel and on the brief; *Anthony J. Bianco,* on the brief).

The opinion of the court was delivered by

ASHRAFI, J.A.D.

Plaintiffs Linda and David Kubert were grievously injured by an eighteen-year-old driver who was texting while driving and crossed the center-line of the road. Their claims for compensation from the young driver have been settled and are no longer part of this lawsuit. Plaintiffs appeal the trial court's dismissal of their claims against the driver's seventeen-year-old friend who was texting the driver much of the day and sent a text message to him immediately before the accident.

New Jersey prohibits texting while driving. A statute under our motor vehicle laws makes it illegal to use a cell phone that is not "hands-free" while driving, except in certain specifically-described emergency situations. *N.J.S.A.* 39:4–97.3.[1] An offender is subject to a fine of $100. *N.J.S.A.* 39:4–97.3(d). For future cases like this one, the State Legislature enacted a law, called the "Kulesh, Kubert, and Bolis Law," to provide criminal penalties for those who are distracted by use of a cell phone while driving and injure others. The new law explicitly permits a jury to infer that a driver who was using a hand-held cell phone and caused injury in an accident may be guilty of assault by auto, a fourth-degree crime if someone was injured seriously, thus exposing the driver to a potential sentence in state prison.[2]

---

[1] *N.J.S.A.* 39:4–97.3 states in part:

 a. The use of a wireless telephone or electronic communication device by an operator of a moving motor vehicle on a public road or highway shall be unlawful except when the telephone is a hands-free wireless telephone or the electronic communication device is used hands-free....
 Nothing in [this law] shall apply to the use of a citizen's band radio or two-way radio by an operator of a moving commercial motor vehicle or authorized emergency vehicle on a public road or highway.
 b. The operator of a motor vehicle may use a hand-held wireless telephone while driving with one hand on the steering wheel only if:
 (1) The operator has reason to fear for his life or safety, or believes that a criminal act may be perpetrated against himself or another person; or
 (2) The operator is using the telephone to report to appropriate authorities a fire, a traffic accident, a serious road hazard or medical or hazardous materials emergency, or to report the operator of another motor vehicle who is driving in a reckless, careless or otherwise unsafe manner or who appears to be driving under the influence of alcohol or drugs....

[2] *N.J.S.A.* 2C:12–1(c)(1) states:

 A person is guilty of assault by auto or vessel when the person drives a vehicle or vessel recklessly and causes either serious bodily injury or bodily injury to another. Assault by auto or vessel is a crime of the fourth degree if serious bodily injury results and is a disorderly persons offense if bodily injury results. *Proof that the defendant was operating a hand-held wireless telephone while driving a motor vehicle in violation of section 1 of P.L. 2003, c. 310 (C. 39:4–97.3) may give rise to an inference that the defendant was driving recklessly.*
 [Emphasis added.]

██ The issue before us is not directly addressed by these statutes or any case law that has been brought to our attention. We must determine as a matter of civil common law whether one who is texting from a location remote from the driver of a motor vehicle can be liable to persons injured because the driver was distracted by the text. We hold that the sender of a text message can potentially be liable if an accident is caused by texting, but only if the sender knew or had special reason to know that the recipient would view the text while driving and thus be distracted.

In this appeal, we must also decide whether plaintiffs have shown sufficient evidence to defeat summary judgment in favor of the remote texter. We conclude they have not. We affirm the trial court's order dismissing plaintiffs' complaint against the sender of the text messages, but we do not adopt the trial court's reasoning that a remote texter does not have a legal duty to avoid sending text messages to one who is driving.

I.

The Kuberts' claims against defendant Shannon Colonna, the teenage sender of the texts, were never heard by a jury. Since this appeal comes to us from summary judgment in favor of Colonna, we view all the evidence and reasonable inferences that can be drawn from the evidence favorably to plaintiffs, the Kuberts. *R.* 4:46-2(c); *Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995).

On the afternoon of September 21, 2009, David Kubert was riding his motorcycle, with his wife, Linda Kubert, riding as a passenger. As they came south around a curve on Hurd Street in Mine Hill Township, a pick-up truck being driven north by eighteen-year-old Kyle Best crossed the double center line of the roadway into their lane of travel. David Kubert attempted to

---

The underscored sentence was added by *L.* 2012, *c.* 22, § 2, which took effect on July 18, 2012. The amended statute does not apply to the accident in this case.

evade the pick-up truck but could not. The front driver's side of the truck struck the Kuberts and their motorcycle. The collision severed, or nearly severed, David's left leg. It shattered Linda's left leg, leaving her fractured thighbone protruding out of the skin as she lay injured in the road.

Best stopped his truck, saw the severity of the injuries, and called 911. The time of the 911 call was 17:49:15, that is, fifteen seconds after 5:49 p.m. Best, a volunteer fireman, aided the Kuberts to the best of his ability until the police and emergency medical responders arrived. Medical treatment could not save either victim's leg. Both lost their left legs as a result of the accident.[3]

After the Kuberts filed this lawsuit, their attorney developed evidence to prove Best's activities on the day of the accident. In September 2009, Best and Colonna were seeing each other socially but not exclusively; they were not boyfriend and girlfriend. Nevertheless, they texted each other many times each day. Best's cell phone record showed that he and Colonna texted each other sixty-two times on the day of the accident, about an equal number of texts originating from each. They averaged almost fourteen texts per hour for the four-and-a-half-hour, non-consecutive time-span they were in telephone contact on the day of the accident.

The telephone record also showed that, in a period of less than twelve hours on that day, Best had sent or received 180 text messages. In her deposition, Colonna acknowledged that it was her habit also to text more than 100 times per day. She said: "I'm a young teenager. That's what we do." She also testified that she generally did not pay attention to whether the recipient of her texts was driving a car at the time or not. She thought it was "weird" that plaintiffs' attorney was trying to pin her down on whether she knew that Best was driving when she texted him.

---

[3] Our appellate record does not include medical evidence, and so, we have not been informed of other injuries the Kuberts suffered in the accident.

During the day of the accident, a Monday, Best and Colonna exchanged many text messages in the morning, had lunch together at his house, and watched television until he had to go to his part-time job at a YMCA in Randolph Township.[4] The time record from the YMCA showed that Best punched in on a time clock at 3:35 p.m. At 3:49 p.m., Colonna texted him, but he did not respond at that time. He punched out of work at 5:41. A minute later, at 5:42, Best sent a text to Colonna. He then exchanged three text messages with his father, testifying at his deposition that he did so while in the parking lot of the YMCA and that the purpose was to notify his parents he was coming home to eat dinner with them.

The accident occurred about four or five minutes after Best began driving home from the YMCA. At his deposition, Best testified that he did not text while driving—meaning that it was not his habit to text when he was driving. He testified falsely at first that he did not text when he began his drive home from the YMCA on the day of the accident. But he was soon confronted with the telephone records, which he had seen earlier, and then he admitted that he and Colonna exchanged text messages within minutes of his beginning to drive.

The sequence of texts between Best and Colonna in the minutes before and after the accident is shown on the following chart. The first-listed text occurred immediately after Best left work, apparently while he was still at the YMCA, and the three texts in boldface type are those that were exchanged while Best was driving:

| Sent | Sender | Received | Recipient |
|------|--------|----------|-----------|
| 5:42:03 | Best | 5:42:12 | Colonna |
| **5:47:49** | **Best** | **5:47:56** | **Colonna** |
| **5:48:14** | **Colonna** | **5:48:23** | **Best** |
| **5:48:58** | **Best** | **5:49:07** | **Colonna** |

---

[4] Our record does not indicate why Colonna was not in school that day. Best was a student at a community college and also worked part-time.

*(5:49:15 911 Call)*

| 5:49:20 | Colonna | 5:55:30 | Best |
|---------|---------|---------|------|
| 5:54:08 | Colonna | 5:55:33 | Best |

This sequence indicates the precise time of the accident—within seconds of 5:48:58. Seventeen seconds elapsed from Best's sending a text to Colonna and the time of the 911 call after the accident. Those seconds had to include Best's stopping his vehicle, observing the injuries to the Kuberts, and dialing 911. It appears, therefore, that Best collided with the Kuberts' motorcycle immediately after sending a text at 5:48:58. It can be inferred that he sent that text in response to Colonna's text to him that he received twenty-five seconds earlier. Finally, it appears that Best initiated the texting with Colonna as he was about to and after he began to drive home.

Missing from the evidence is the content of the text messages. Plaintiffs were not able to obtain the messages Best and Colonna actually exchanged, and Best and Colonna did not provide that information in their depositions. The excerpts of Best's deposition that have been provided to us for this appeal do not include questions and answers about the content of his text messages with Colonna late that afternoon. When Colonna's deposition was taken sixteen months after the accident, she testified she did not remember her texts that day. Despite the fact that Best did not respond to her last two texts at 5:55 p.m., and despite her learning on the same evening that he had been involved in a serious accident minutes before he failed to respond to her, Colonna testified that she had "no idea" what the contents of her text messages with Best were that afternoon.

After plaintiffs learned of Colonna's involvement and added her to their lawsuit, she moved for summary judgment. Her attorney argued to the trial court that Colonna had no liability for the accident because she was not present at the scene, had no legal duty to avoid sending a text to Best when he was driving, and further, that she did not know he was driving. The trial judge

reviewed the evidence and the arguments of the attorneys, conducted independent research on the law, and ultimately concluded that Colonna did not have a legal duty to avoid sending a text message to Best, even if she knew he was driving. The judge dismissed plaintiffs' claims against Colonna.

## II.

On appeal before us, plaintiffs argue that Colonna is potentially liable to them if a jury finds that her texting was a proximate cause of the accident. They argue that she can be found liable because she aided and abetted Best's unlawful texting while he was driving, and also because she had an independent duty to avoid texting to a person who was driving a motor vehicle. They claim that a jury can infer from the evidence that Colonna knew Best was driving home from his YMCA job when she texted him at 5:48:14, less than a minute before the accident.

We are not persuaded by plaintiffs' arguments as stated, but we also reject defendant's argument that a sender of text messages never has a duty to avoid texting to a person driving a vehicle. We conclude that a person sending text messages has a duty not to text someone who is driving if the texter knows, or has special reason to know, the recipient will view the text while driving. But we also conclude that plaintiffs have not presented sufficient evidence to prove that Colonna had such knowledge when she texted Best immediately before the accident.

## A.

We first address generally the nature of a duty imposed by the common law.[5]

---

[5] Common law refers to judicial determination of the law where the Legislature has not enacted a directly-applicable statute. *See, e.g., In re Baby M*, 109 *N.J.* 396, 537 *A.2d* 1227 (1988); *Kelly v. Gwinnell*, 96 *N.J.* 538, 552–53, 476 *A.2d* 1219 (1984). Historically, the American system of justice was derived from the English common law. *See, e.g., State v. Smith*, 85 *N.J.* 193, 199–204, 426 *A.2d*

In a lawsuit alleging that a defendant is liable to a plaintiff because of the defendant's negligent conduct, the plaintiff must prove four things: (1) that the defendant owed a duty of care to the plaintiff, (2) that the defendant breached that duty, (3) that the breach was a proximate cause of the plaintiff's injuries, and (4) that the plaintiff suffered actual compensable injuries as a result. *Polzo v. Cnty. of Essex,* 196 *N.J.* 569, 584, 960 *A.*2d 375 (2008). The plaintiff bears the burden of proving each of these four "core elements" of a negligence claim. *Brunson v. Affinity Fed. Credit Union,* 199 *N.J.* 381, 400, 972 *A.*2d 1112 (2009).

 Because plaintiffs in this case sued Best and eventually settled their claims against him, it is important to note that the law recognizes that more than one defendant can be the proximate cause of and therefore liable for causing injury. *See, e.g., Brodsky v. Grinnell Haulers, Inc.,* 181 *N.J.* 102, 106–08, 853 *A.*2d 940 (2004); *Rappaport v. Nichols,* 31 *N.J.* 188, 203–04, 156 *A.*2d 1 (1959). Whether a duty exists to prevent harm is not controlled

---

38 (1981); *In re Will of Davis,* 134 *N.J. Eq.* 393, 399–401, 35 *A.*2d 880 (E. & A.1944). It has adhered to a long tradition of judicial determination of legal issues such as liability for negligence in civil lawsuits. *Estate of Desir ex. rel. Estiverne v. Vertus,* 214 *N.J.* 303, 327–29, 69 *A.*3d 1247 (2013); *J.S. v. R.T.H.,* 155 *N.J.* 330, 339, 714 *A.*2d 924 (1998); *Kelly, supra,* 96 *N.J.* at 552, 476 *A.*2d 1219. To foster stability and predictability, the common law relies heavily on prior judicial precedents. *Luchejko v. City of Hoboken,* 207 *N.J.* 191, 208, 23 *A.*3d 912 (2011).

The Legislature may overrule or modify judicial determination of a common law duty by enacting a pertinent statute. *See, e.g., N.J.S.A.* 2A:15–5.5 to –5.8, *L.* 1987, *c.* 404 (limiting *Kelly, supra,* 96 *N.J.* 538, 476 *A.*2d 1219, which imposed social host liability for negligence of an intoxicated guest); *N.J.S.A.* 2A:53A–7, *L.* 1959, *c.* 90 (overruling *Dalton v. St. Luke's Catholic Church,* 27 *N.J.* 22, 141 *A.*2d 273 (1958), and companion cases that abolished charitable immunity). Similarly, the courts can depart from common law precedents when circumstances change or the need to modify the law is shown. *See, e.g., Stewart v. 104 Wallace Street, Inc.,* 87 *N.J.* 146, 432 *A.*2d 881 (1981) (overruling *Yanhko v. Fane,* 70 *N.J.* 528, 362 *A.*2d 1 (1976), and prior precedents on liability of commercial owner of property for hazardous condition of sidewalk); *Smith, supra,* 85 *N.J.* at 203–07, 426 *A.*2d 38 (holding that English common law rule of marital exemption did not apply to the New Jersey rape statute).

by whether another person also has a duty, even a greater duty, to prevent the same harm. If more than one defendant breached his or her duty and proximately caused the injuries, the jury at a trial may determine relative fault and assign a percentage of responsibility to each under our comparative negligence statutes, *N.J.S.A.* 2A:15–5.1 to–5.4. *See Brodsky, supra,* 181 *N.J.* at 108, 853 *A.*2d 940.

■ "A duty is an obligation imposed by law requiring one party 'to conform to a particular standard of conduct toward another.'" *Acuna v. Turkish,* 192 *N.J.* 399, 413, 930 *A.*2d 416 (2007) (quoting *Prosser & Keeton on Torts: Lawyer's Edition* § 53, at 356 (5th ed. 1984)), *cert. denied,* 555 *U.S.* 813, 129 *S.Ct.* 44, 172 *L.Ed.*2d 22 (2008); *see also Restatement (Second) of Torts* § 4 (1965) ("The word 'duty' . . . denote[s] the fact that the actor is required to conduct himself in a particular manner at the risk that if he does not do so he becomes subject to liability to another to whom the duty is owed for any injury sustained by such other, of which that actor's conduct is a legal cause.").

■ Whether a duty of care exists "is generally a matter for a court to decide," not a jury. *Acuna, supra,* 192 *N.J.* at 413, 930 *A.*2d 416. The "fundamental question [is] whether the plaintiff's interests are entitled to legal protection against the defendant's conduct." *J.S. v. R.T.H.,* 155 *N.J.* 330, 338, 714 *A.*2d 924 (1998) (quoting *Weinberg v. Dinger,* 106 *N.J.* 469, 481, 524 *A.*2d 366 (1987)).

The New Jersey Supreme Court recently analyzed the common law process by which a court decides whether a legal duty of care exists to prevent injury to another. *Estate of Desir ex. rel. Estiverne v. Vertus,* 214 *N.J.* 303, 69 *A.*3d 1247 (2013). The Court reviewed precedents developed over the years in our courts and restated the "most cogent explanation of the principles that guide [the courts] in determining whether to recognize the existence of a duty of care":

"[w]hether a person owes a duty of reasonable care toward another turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness

under all of the circumstances in light of considerations of public policy. That inquiry involves identifying, weighing, and balancing several factors—the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution.... The analysis is both very fact-specific and principled; it must lead to solutions that properly and fairly resolve the specific case and generate intelligible and sensible rules to govern future conduct."

[ (*Id.* at 322, 69 *A.*3d 1247) (alteration in original) (citations omitted) (quoting *Hopkins v. Fox & Lazo Realtors,* 132 *N.J.* 426, 439, 625 *A.*2d 1110 (1993)).]

The Court emphasized that the law must take into account "generally applicable rules to govern societal behaviors," not just an "outcome that reaches only the particular circumstances and parties before the Court today[.]" *Id.* at 323, 69 *A.*3d 1247. The Court described all of these considerations as "a full duty analysis" to determine whether the law recognizes a duty of care in the particular circumstances of a negligence case. *Id.* at 316, 69 *A.*3d 1247 (quoting *Rowe v. Mazel Thirty, LLC,* 209 *N.J.* 35, 44, 34 *A.*3d 1248 (2012)).

B.

In this case, plaintiffs argue that a duty of care should be imposed upon Colonna because she aided and abetted Best's violation of the law when he used his cell phone while driving. To support their argument, plaintiffs cite section 876 of the *Restatement (Second) of Torts* (1965), a compilation of common law principles. Under section 876 of the *Restatement,* an individual is liable if he or she knows that another person's "conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other."

To illustrate this concept, the *Restatement* provides the following hypothetical example:

A and B participate in a riot in which B, although throwing no rocks himself, encourages A to throw rocks. One of the rocks strikes C, a bystander. B is subject to liability to C.

[*Restatement* § 876, comment d, illustration 4.]

The example illustrates that one does not actually have to be the person who threw a rock to be liable for injury caused by the rock. In *Tarr v. Ciasulli,* 181 *N.J.* 70, 84, 853 *A.*2d 921 (2004), the New

Jersey Supreme Court adopted the principle stated in *Restatement* § 876 as applicable to determine joint liability when persons act in concert and cause harm to another.

In this case, plaintiffs assert that Colonna and Best were acting in concert in exchanging text messages. Although Colonna was at a remote location from the site of the accident, plaintiffs say she was "electronically present" in Best's pick-up truck immediately before the accident and she aided and abetted his unlawful use of his cell phone.

In *Champion ex rel. Ezzo v. Dunfee*, 398 *N.J.Super.* 112, 939 *A.*2d 825 (App.Div.), *certif. denied*, 195 *N.J.* 420, 949 *A.*2d 849 (2008), we analyzed *Restatement* § 876 in a context where the defendant was actually present at the site of the accident. In *Champion*, the injured plaintiff was a backseat passenger in a car driven by a friend who had been drinking. The driver's girlfriend was also a passenger in the car, sitting in the front seat. The car approached speeds of 100 miles per hour as the driver tried to prove the performance capabilities of his car. The car hit a bump and crashed, severely injuring the backseat passenger. *Champion, supra*, 398 *N.J.Super.* at 116–17, 939 *A.*2d 825. He sued the driver, and subsequently, added the driver's girlfriend as a defendant in his lawsuit on a theory that she had a duty to prevent her boyfriend from driving because she knew he had been drinking. *Id.* at 117, 939 *A.*2d 825.

We described the legal issue as follows: "whether a passenger in a motor vehicle, which she neither owns nor controls, owes an affirmative duty to a fellow passenger to prevent a visibly intoxicated driver from operating his own automobile." *Id.* at 115, 939 *A.*2d 825. We reviewed common law precedents from other jurisdictions where passengers in a car had encouraged the driver to consume alcohol or drugs or otherwise to drive dangerously, and we compared those precedents to others where the passengers were present but neither encouraged nor prevented the negligent conduct of the driver. *Id.* at 122–23, 939 *A.*2d 825. We concluded in *Champion* that the law permits recovery against a

passenger under two conditions. One is a "special relationship" that gave the passenger control over the driver's conduct, such as an employer-employee or parent-child relationship. *Id.* at 121–22, 939 *A.*2d 825. The second is "that the defendant passenger *actively encouraged* the driver to commit" the negligent act. *Id.* at 122, 939 *A.*2d 825 (emphasis added). Mere failure to prevent wrongful conduct by another is ordinarily not sufficient to impose liability. *Id.* at 118, 939 *A.*2d 825. In *Champion,* the girlfriend could not be held liable merely for failing to prevent her boyfriend's negligent driving. *Id.* at 127, 939 *A.*2d 825.

In this case, Colonna did not have a special relationship with Best by which she could control his conduct. Nor is there evidence that she actively encouraged him to text her while he was driving. Colonna sent two texts to Best in the afternoon of September 21, 2009, one about two hours and the second about twenty-five seconds before the accident. What she said in those texts is unknown. Even if a reasonable inference can be drawn that she sent messages requiring responses, the act of sending such messages, by itself, is not active encouragement that the recipient read the text and respond immediately, that is, while driving and in violation of the law.

Another case decided by this court, *Podias v. Mairs,* 394 *N.J.Super.* 338, 926 *A.*2d 859 (App.Div.), *certif. denied,* 192 *N.J.* 482, 932 *A.*2d 32 (2007), also provides some guidance on liability of a passenger for aiding and abetting a driver's wrongful conduct. In *Podias,* we reviewed claims against two passengers who were present when an eighteen-year-old driver who had been drinking struck and injured a motorcyclist at 2:00 a.m. on the Garden State Parkway. *Id.* at 343–44, 926 *A.*2d 859. Rather than calling for medical aid for the unconscious motorcyclist, the passengers discussed how to prevent detection of their own involvement in the incident. They had cell phones, but they did not call the police, and they also told the driver not to call the police and not to get them involved. *Id.* at 344–45, 926 *A.*2d 859. The driver and passengers all fled the scene of the accident. The motorcyclist

was killed by another driver who did not see him lying injured in the roadway. *Id.* at 345, 926 *A*.2d 859.

We reviewed *Restatement* § 876 and held that the passengers could be found liable for giving "substantial assistance" to the driver in failing to fulfill his legal duty to remain at the scene of the accident and to notify the police. *Id.* at 353–54, 926 *A*.2d 859. We found "an aiding and abetting theory" to be viable because the passengers had taken "affirmative steps in the immediate aftermath [of the accident] to conceal their involvement" and to encourage the driver's violation of the law. *Id.* at 355, 926 *A*.2d 859.[6]

Unlike the facts of *Podias*, the evidence in this case is not sufficient for a jury to conclude that Colonna took affirmative steps and gave substantial assistance to Best in violating the law. Plaintiffs produced no evidence tending to show that Colonna urged Best to read and respond to her text while he was driving.

The evidence available to plaintiffs is not sufficient to prove Colonna's liability to the Kuberts on the basis of aiding and abetting Best's negligent driving while using a cell phone.

C.

Plaintiffs argue alternatively that Colonna independently had a duty not to send texts to a person who she knew was driving a vehicle. They have not cited a case in New Jersey or any other jurisdiction that so holds, and we have not found one in our own research.

The trial court cited one case that involved distraction of the driver by text messages, *Durkee v. C.H. Robinson Worldwide, Inc.,* 765 *F.Supp.*2d 742 (W.D.N.C.2011), *aff'd sub nom. Durkee v. Geologic Solutions, Inc.,* 502 *Fed.Appx.* 326 (4th Cir.2013). In *Durkee,* the plaintiffs were injured when a tractor-trailer rear-

---

[6] We also held in *Podias* that the passengers had an independent affirmative duty to help the injured motorcyclist avoid further harm, if nothing else, by using their cell phones to call the police. *Id.* at 351–52, 926 *A*.2d 859.

ended their car. *Id.* at 745. In addition to the truck driver and other defendants, they sued the manufacturer of a text-messaging device that was installed in the tractor-trailer. They claimed the device was designed defectively because it could be viewed while the truck driver was driving and it distracted the driver immediately before the accident that injured them. *Id.* at 745–46. The federal court dismissed the plaintiffs' claims against the manufacturer of the device, holding that it was the driver's duty to avoid distraction. *Id.* at 750, 754. Since other normal devices in a motor vehicle could distract the driver, such as a radio or GPS device, attributing a design defect to the product would have too far-reaching an effect. It would allow product liability lawsuits against manufacturers of ordinary devices found in many motor vehicles and hold them liable for a driver's careless use of the product. *Id.* at 749.

Similarly, at least two state courts have declined to hold manufacturers of cell phones liable for failing to design their products to prevent harm caused when drivers are distracted by use of the phones. *See Estate of Doyle v. Sprint/Nextel Corp.*, 248 *P.*3d 947, 951 (Okla.Civ.App.2010); *Williams v. Cingular Wireless*, 809 *N.E.*2d 473, 478 (Ind.Ct.App.), *appeal denied*, 822 *N.E.*2d 976 (Ind.2004).

We view *Durkee* and these state cases as appropriately leading to the conclusion that one should not be held liable for sending a wireless transmission simply because some recipient might use his cell phone unlawfully and become distracted while driving. Whether by text, email, Twitter, or other means, the mere sending of a wireless transmission that unidentified drivers may receive and view is not enough to impose liability.

Having considered the competing arguments of the parties, we also conclude that liability is not established by showing only that the sender directed the message to a specific identified recipient, even if the sender knew the recipient was then driving. We conclude that additional proofs are necessary to establish the sender's liability, namely, that the sender also knew or had special

reason to know that the driver would read the message while driving and would thus be distracted from attending to the road and the operation of the vehicle. We reach these conclusions by examining the law in analogous circumstances and applying "a full duty analysis" as discussed in *Desir, supra,* 214 *N.J.* at 317, 69 *A.*3d 1247.

A section of the *Restatement* that the parties have not referenced provides:

> An act is negligent if the actor intends it to affect, or realizes or should realize that it is likely to affect, the conduct of another, a third person, or an animal in such a manner as to create an unreasonable risk of harm to the other.
>
> [*Restatement* § 303.]

To illustrate this concept, the *Restatement* provides the following hypothetical example:

> A is driving through heavy traffic. B, a passenger in the back seat, suddenly and unnecessarily calls out to A, diverting his attention, thus causing him to run into the car of C. B is negligent toward C.
>
> [*Restatement* § 303, comment d, illustration 3.]

▮ We have recognized that a passenger who distracts a driver can be held liable for the passenger's own negligence in causing an accident. In other words, a passenger in a motor vehicle has a duty "not to interfere with the driver's operations." *Champion, supra,* 398 *N.J.Super.* at 118, 939 *A.*2d 825 (citing *Lombardo v. Hoag,* 269 *N.J.Super.* 36, 54, 634 *A.*2d 550 (App.Div. 1993), *certif. denied,* 135 *N.J.* 469, 640 *A.*2d 850 (1994)).

▮ One form of interference with a driver might be obstructing his view or otherwise diverting his attention from the tasks of driving. It would be reasonable to hold a passenger liable for causing an accident if the passenger obstructed the driver's view of the road, for example, by suddenly holding a piece of paper in front of the driver's face and urging the driver to look at what is written or depicted on the paper. The same can be said if a passenger were to hold a cell phone with a text message or a picture in front of the driver's eyes. Such distracting conduct would be direct, independent negligence of the passenger, not aiding and abetting of the driver's negligent conduct. Here, of

course, Colonna did not hold Best's cell phone in front of his eyes and physically distract his view of the road.

The more relevant question is whether a passenger can be liable not for actually obstructing the driver's view but only for urging the driver to take his eyes off the road and to look at a distracting object. We think the answer is yes, but only if the passenger's conduct is unreasonably risky because the passenger knows, or has special reason to know, that the driver will in fact be distracted and drive negligently as a result of the passenger's actions.

It is the primary responsibility of the driver to obey the law and to avoid distractions. Imposing a duty on a passenger to avoid any conduct that might theoretically distract the driver would open too broad a swath of potential liability in ordinary and innocent circumstances. As the Supreme Court stated in *Desir,* *supra,* 214 *N.J.* at 323, 69 *A.*3d 1247 courts must be careful not to "create a broadly worded duty and . . . run the risk of unintentionally imposing liability in situations far beyond the parameters we now face." "The scope of a duty is determined under 'the totality of the circumstances,' and must be 'reasonable' under those circumstances." *J.S., supra,* 155 *N.J.* at 339, 714 *A.*2d 924 (quoting *Clohesy v. Food Circus Supermarkets, Inc.,* 149 *N.J.* 496, 514, 520, 694 *A.*2d 1017 (1997)).

"Foreseeability of the risk of harm is the foundational element in the determination of whether a duty exists." *Id.* at 337, 714 *A.*2d 924; *accord Williamson v. Waldman,* 150 *N.J.* 232, 239, 696 *A.*2d 14 (1997). "Foreseeability, in turn, is based on the defendant's knowledge of the risk of injury." *Podias, supra,* 394 *N.J.Super.* at 350, 926 *A.*2d 859 (citing *Weinberg, supra,* 106 *N.J.* at 484–85, 524 *A.*2d 366).

It is foreseeable that a driver who is actually distracted by a text message might cause an accident and serious injuries or death, but it is not generally foreseeable that every recipient of a text message who is driving will neglect his obligation to obey the

law and will be distracted by the text. Like a call to voicemail or an answering machine, the sending of a text message by itself does not demand that the recipient take any action. The sender should be able to assume that the recipient will read a text message only when it is safe and legal to do so, that is, when not operating a vehicle. However, if the sender knows that the recipient is both driving and will read the text immediately, then the sender has taken a foreseeable risk in sending a text at that time. The sender has knowingly engaged in distracting conduct, and it is not unfair also to hold the sender responsible for the distraction.

 "When the risk of harm is that posed by third persons, a plaintiff may be required to prove that defendant was in a position to 'know or have reason to know, from past experience, that there [was] a likelihood of conduct on the part of [a] third person[ ]' that was 'likely to endanger the safety' of another." *J.S., supra*, 155 *N.J.* at 338, 714 *A.*2d 924 (quoting *Clohesy, supra*, 149 *N.J.* at 507, 694 *A.*2d 1017). In *J.S.*, the Court used the phrase "special reason to know" in reference to a personal relationship or prior experience that put a defendant "in a position" to "discover the risk of harm." *Ibid.* Consequently, when the sender "has actual knowledge or special reason to know," *id.* at 352, 714 *A.*2d 924, from prior texting experience or otherwise, that the recipient will view the text while driving, the sender has breached a duty of care to the public by distracting the driver.

 Our conclusion that a limited duty should be imposed on the sender is supported by the "full duty analysis" described by the Supreme Court—identifying, weighing, and balancing "the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." *Desir, supra*, 214 *N.J.* at 332, 69 *A.*3d 1247; *Hopkins, supra*, 132 *N.J.* at 439, 625 *A.*2d 1110. When the sender knows that the text will reach the driver while operating a vehicle, the sender has a relationship to the public who use the roadways similar to that of a passenger physically present in the vehicle. As we have stated, a passenger must avoid distracting

the driver. The remote sender of a text who knows the recipient is then driving must do the same.

When the sender texts a person who is then driving, knowing that the driver will immediately view the text, the sender has disregarded the attendant and foreseeable risk of harm to the public. The risk is substantial, as evidenced by the dire consequences in this and similar cases where texting drivers have caused severe injuries or death.

■ With respect to the sender's opportunity to exercise care, "[a] corresponding consideration is the practicality of preventing [the risk]." *Podias, supra,* 394 *N.J.Super.* at 350, 926 *A.*2d 859. We must take into account "how establishing this duty will work in practice." *Desir, supra,* 214 *N.J.* at 328, 69 *A.*3d 1247. In imposing an independent duty of the passengers in *Podias,* we noted the "relative ease" with which they could have used their cell phones to summon help for the injured motorcyclist. *Podias, supra,* 394 *N.J.Super.* at 351, 926 *A.*2d 859. It is just as easy for the sender of a text message to avoid texting to a driver who the sender knows will immediately view the text and thus be distracted from driving safely. "When the defendant's actions are 'relatively easily corrected' and the harm sought to be presented is 'serious,' it is fair to impose a duty." *Id.* at 350, 926 *A.*2d 859 (quoting *J.S., supra,* 155 *N.J.* at 339–40, 714 *A.*2d 924).

■ At the same time, "[c]onsiderations of fairness implicate the scope as well as the existence of a duty." *J.S., supra,* 155 *N.J.* at 349, 714 *A.*2d 924. Limiting the duty to persons who have such knowledge will not require that the sender of a text predict in every instance how a recipient will act. It will not interfere with use of text messaging to a driver that one expects will obey the law. The limited duty we impose will not hold texters liable for the unlawful conduct of others, but it will hold them liable for their own negligence when they have knowingly disregarded a foreseeable risk of serious injury to others.

Finally, the public interest requires fair measures to deter dangerous texting while driving. Just as the public has learned the dangers of drinking and driving through a sustained campaign and enhanced criminal penalties and civil liability, the hazards of texting when on the road, or to someone who is on the road, may become part of the public consciousness when the liability of those involved matches the seriousness of the harm.

Our concurring colleague expresses reluctance to conclude that a remote texter has an independent duty of care to avoid being a cause of traffic accidents and injuries. The concurring opinion states that traditional tort principles are sufficient to decide in this case that Colonna had no liability for the Kuberts' injuries and we should say no more. *Post* at 524–25, 75 *A.*3d at 1232. We have been asked to decide the status of the law in these circumstances, and we have applied traditional tort principles, as developed in analogous cases, to delineate the limited scope of a remote texter's duty. As the New Jersey Supreme Court confirmed in *Desir, supra,* 214 *N.J.* at 322, 69 *A.*3d 1247: "It has long been true that '[d]eterminations of the scope of duty in negligence cases has traditionally been a function of the judiciary.' " (quoting *Kelly v. Gwinnell,* 96 *N.J.* 538, 552, 476 *A.*2d 1219 (1984)).

To summarize our conclusions, we do not hold that someone who texts to a person driving is liable for that person's negligent actions; the driver bears responsibility for obeying the law and maintaining safe control of the vehicle. We hold that, when a texter knows or has special reason to know that the intended recipient is driving and is likely to read the text message while driving, the texter has a duty to users of the public roads to refrain from sending the driver a text at that time.

### D.

In this case, plaintiffs developed evidence pertaining to the habits of Best and Colonna in texting each other repeatedly. They also established that the day of the accident was not an unusual texting day for the two. But they failed to develop

evidence tending to prove that Colonna not only knew that Best was driving when she texted him at 5:48:14 p.m. but that she knew he would violate the law and immediately view and respond to her text.

As our recitation of the facts shows, Colonna sent only one text while Best was driving. The contents of that text are unknown. No testimony established that she was aware Best would violate the law and read her text as he was driving, or that he would respond immediately. The evidence of multiple texting at other times when Best was not driving did not prove that Colonna breached the limited duty we have described.

Because the necessary evidence to prove breach of the remote texter's duty is absent on this record, summary judgment was properly granted dismissing plaintiffs' claims against Colonna.

Affirmed.

ESPINOSA, J.A.D., concurring.

I concur in the result we reach today. I also observe that the bar set by the majority for the imposition of liability is high and will rarely be met since the duty created arises when the conduct of a person, not in an automobile, interferes with the driver's operation of the vehicle. Still, I do not agree that it is necessary for us to articulate a new duty specific to persons in remote locations who send text messages to drivers, and I part company with my colleagues in their analysis of the duty imposed. In my view, traditional tort principles provide adequate guidance to determine whether liability should be imposed in such circumstances.

"Traditional tort theory emphasizes individual liability, which is to say that each particular defendant who is to be charged with responsibility must be proceeding negligently." *Podias, supra,* 394 *N.J.Super.* at 346, 926 *A.*2d 859. As we have noted, the driver carries the personal responsibility to obey traffic laws and exercise appropriate care for the safety of others. (op. at 516–17, 75 *A.*3d at

1227). This responsibility includes the obligation to avoid or ignore distractions created by other persons, whether in the automobile or at a remote location, that impair the driver's ability to exercise appropriate care for the safety of others. Text messages received while driving plainly constitute a distraction the driver must ignore.[1]

The majority finds, "[w]hen the sender knows that the text will reach the driver while operating a vehicle, the sender has a relationship to the public who use the roadways similar to that of a passenger physically present in the vehicle." (op. at 517, 75 A.3d at 1228). The premise for this holding is that knowledge a text message will "reach the driver while operating a vehicle," without more, places the remote texter in a position equivalent to that of a passenger in the vehicle. The equation of these positions is Procrustean in nature, however, because a person who is not present in the automobile lacks the first-hand knowledge of the circumstances attendant to the driver's operation of the vehicle that a passenger possesses and has even less ability to control the actions of the driver. Still, the analysis applicable to passenger liability is helpful.

Passenger liability was at issue in two of the cases discussed in the majority opinion, *Champion, supra,* 398 *N.J.Super.* 112, 939 *A.*2d 825, and *Podias, supra,* 394 *N.J.Super.* 338, 926 *A.*2d 859.

---

[1] Studies have indicated that distracted driving—which includes using a cell phone or a navigation system, eating, and drinking coffee—is a factor in approximately one-fifth of motor vehicle accidents involving personal injury. The Centers for Disease Control and Prevention reported that 18% of all motor vehicle accidents in 2010 in which someone was injured involved distracted driving. *Injury Prevention & Control: Motor Vehicle Safety,* Centers for Disease Control and Prevention, www.cdc.gov/motorvehiclesafety/distracted_driving (last visited August 20, 2013). The National Highway Traffic Safety Administration also reported that driver distraction was a factor in 16% of all fatal crashes in 2008 and in 21% of all crashes involving personal injury. *Traffic Safety Facts,* National Highway Traffic Safety Administration, www.nhtsa.gov/Research/Crash+Avoidance/51fci.Distraction.print (follow "Traffic Safety Facts—Research Note: An examination of Driver Distraction as Recorded in NHTSA Databases, September 2009" hyperlink) (last visited August 20, 2013).

Both cases concerned a passenger's failure to prevent the driver from engaging in conduct that posed a risk of harm to another.

In *Champion, supra*, the plaintiff, a passenger, alleged that the driver's girlfriend, a fellow passenger, was negligent in failing to prevent the visibly intoxicated driver from operating his own automobile. We disapproved an extension of principles that would impose "a new duty on anyone beyond those in control and operation of the vehicle." 398 *N.J.Super.* at 120, 939 *A*.2d 825 (citing *Lombardo, supra*, 269 *N.J.Super.* at 48, 634 *A*.2d 550). We recognized two exceptions to the rule of passenger non-liability, i.e., when a special relationship exists between the passenger and driver that affords the passenger "some control over the driver," as embodied in *Restatement (Second) of Torts* § 315 (1965),[2] *Champion, supra*, 398 *N.J.Super.* at 121, 939 *A*.2d 825, and when "the passenger substantially encourages or assists in the driver's tortious conduct." *Id.* at 122, 939 *A*.2d 825 (citing *Restatement (Second) of Torts* § 876 (1979)).

As the majority opinion notes, the type of "special relationship," such as parent-child, master-servant, landlord-tenant, and guardian-ward, required to impose liability for the conduct of another under section 315 of the *Restatement, ibid.*, was not present here. (op. at 511–13, 75 *A*.3d at 1224–25).

To prevail on the "aiding and abetting" theory based on section 876 of the *Restatement*, the plaintiff must prove three elements: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant

---

[2] Section 315 provides, in part:

There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct.

[*Restatement (Second) of Torts* § 315 (1965).]

must knowingly and substantially assist the principal violation." *Tarr, supra,* 181 *N.J.* at 84, 853 *A.*2d 921.

As to the last of these factors, the comments to section 876 note that "[t]he assistance of or participation by the defendant may be so slight that he is not liable for the act of the other." *Restatement (Second) of Torts* § 876(b) cmt. d. (1979). To assist in determining whether a defendant provided "substantial assistance," the comments list five factors to be considered: "the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, his relation to the other and his state of mind." *Ibid.; see also Hurley v. Atl. City Police Dep't,* 174 *F.*3d 95, 127 n. 27 (3d Cir.1999) (noting the addition of a sixth relevant factor, the duration of the assistance provided, by the D.C. Circuit in *Halberstam v. Welch,* 705 *F.*2d 472, 484 (D.C.Cir.1983)), *cert. denied,* 528 *U.S.* 1074, 120 *S.Ct.* 786, 145 *L.Ed.*2d 663 (2000); *Podias, supra,* 394 *N.J.Super.* at 353, 926 *A.*2d 859.

When the tort is the driver's use of text messaging, it is evident that at least one of the factors—the remote texter's absence from the location of the tort—will weigh against liability. The driver requires no assistance from the remote texter to commit this tort and so, a determination of potential liability will depend largely on whether the remote texter provided the level of "active and purposeful conduct" that is required for aiding-and-abetting liability to be imposed. *Tarr, supra,* 181 *N.J.* at 83, 853 *A.*2d 921.

In *Champion, supra,* we cited cases that illustrated examples of such active encouragement, such as where the passenger encouraged the driver to ignore applicable traffic laws or provided intoxicants to the driver to consume while driving. 398 *N.J.Super.* at 122–23, 939 *A.*2d 825. In each example, the passenger's presence in the automobile provided an awareness of the circumstances that contributed to the risk created by the driver's conduct. *E.g. Cooper v. Bondoni,* 841 *P.*2d 608, 611–12 (Okla.Civ. App.1992) (minor passengers gave substantial assistance and encouragement to minor driver's negligent operation of his vehicle

where they provided him with alcoholic beverages and urged him to pass a truck while climbing a hill in a no-passing zone), *cert. denied* (Okla.1992). However, mere presence and participation in the same activity that gave rise to the driver's liability, such as drinking alcohol in the car, were insufficient to constitute the substantial encouragement required for the imposition of liability. *Champion, supra,* 398 *N.J.Super.* at 123–24, 939 *A.*2d 825; *see also Podias, supra,* 394 *N.J.Super.* at 353, 926 *A.*2d 859 (noting that " 'aiding-abetting' focuses on whether a defendant knowingly gave 'substantial assistance' to someone engaged in wrongful conduct, not on whether the defendant *agreed* to join the wrongful conduct").

In contrast to *Champion,* where the passenger's conduct can be considered mere acquiescence to the driver's tortious conduct, the circumstances and conduct of the passengers in *Podias* provided a basis for the imposition of liability where passengers urged the driver to leave a hit-and-run victim lying on the Garden State Parkway in the middle of the night and failed to call for any assistance for the victim. We stated, "the degree of defendants' involvement, coupled with the serious peril threatening imminent death to another that might have been avoided with little effort and inconvenience ... creates a sufficient relation to impose a duty of action." *Id.* at 356, 926 *A.*2d 859. Still, we stressed the "narrowness of the issue before us" and stated, "[w]e formulate today no rule of general application." *Id.* at 355, 926 *A.*2d 859.

Just as it was unnecessary to formulate a new rule in *Podias,* we need not create a new duty here. Traditional tort principles provide adequate guidance for our analysis and, indeed, provide the framework for the majority opinion.

There was no special relationship that provided Colonna with the means to control Best's conduct. Therefore, the exception to the general rule that one has no duty to prevent the tortious conduct of another embodied in section 315 of the Restatement does not apply.

Consideration of the factors relevant to an aiding and abetting analysis in this case also supports our conclusion that the evidence was insufficient to impose liability upon Colonna for aiding and abetting Best's negligent conduct. Specifically, there was no evidence that Colonna was "generally aware of [her] role as part of an overall illegal or tortious activity at the time that" she texted Best. *See Tarr, supra,* 181 *N.J.* at 84, 853 *A.*2d 921. Turning to the factors relevant to a determination whether Colonna "knowingly and substantially assist[ed] the principal violation," *see ibid.,* the act she purportedly encouraged was Best's text messaging while driving. She was not physically present at the place of the principal violation and her remote location afforded her limited, if any, knowledge of the circumstances of Best's text messaging. Her "assistance" consisted of receiving several text messages and sending one in reply before the accident. The evidence regarding her state of mind fails to reveal any intention to assist Best in committing a tortious act. Even assuming that Colonna knew Best was driving, her conduct in sending a text under the circumstances here amounted to that of a companion who merely participated in the same activity and who did not actively encourage Best to ignore applicable law and safety hazards.

The implications of creating a new duty are that existing principles fail to address the issue and that liability could be imposed under circumstances that would not provide a basis for doing so under existing law. Because traditional tort principles provide a sufficient measure for assessing the liability of a person who sends a text message to a driver, I see no reason to establish a new standard for such conduct, particularly when the record before us does not support the imposition of liability upon the remote texter.

The dangers associated with text messaging while driving, and the devastating consequences in this case, were known to the Legislature. We have nothing before us that reflects whether the Legislature considered legislation that would have imposed either civil liability or criminal penalties for a remote texter who sends a

distracting text message to a driver. What we do know is that the legislative response was to amend the assault by auto statute, *N.J.S.A.* 2C:12–1(c)(1), to permit the jury to infer that a defendant who unlawfully used a cell phone while driving "was driving recklessly." *See* "Kulesh's, Kuberts' and Bolis' Law," *L.* 2012, *c.* 22. The effect of the amendment was to codify a permissive inference that the jury could have drawn prior to its enactment. Both before and after the amendment, recklessness was an essential element of *N.J.S.A.* 2C:12–1(c)(1) and the grading of the conduct as either a fourth-degree offense or a disorderly persons offense turned on the degree of injury, not on whether a cell phone was in use. In short, the legislative response was measured, even as to the driver, and did not include any action as to the remote texter.

Therefore, I concur in the result reached, but not in the analysis of the majority opinion.