**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1315-24

ANDERSON RODRIGUES
GUERINI,

     Plaintiff-Respondent,

v.

VIN-RICK BUILDERS, LLC,

     Defendant-Respondent,

and

HUTCH GROVE ENTERPRISES,

     Defendant-Appellant,

and

AMBIANCE GENERAL BUILDING,
LLC, a/k/a AMBIANCE GENERAL
CONTRACTORS, and PARK POINT
CONDO ASSOCIATION,

     Defendants.

_____

VIN-RICK BUILDERS, LLC,

Third-Party Plaintiff-Respondent,

v.

WARRENVILLE PLUMBING,
PARK POINT CONDO ASSOCIATION,
and HUTCH GROVE ENTERPRISES,

Third-Party Defendants.

_____

Argued March 18, 2026 – Decided April 21, 2026

Before Judges Mayer, Paganelli and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-6427-18.

Michael Confusione argued the cause for appellant (Hegge & Confusione, LLC, attorneys; Michael Confusione, of counsel and on the briefs).

John Ratkowitz argued the cause for respondent Anderson Rodrigues Guerini (Ginarte Gonzalez & Winograd, LLP, attorneys; Robert J. Ciampaglio and John Ratkowitz, on the brief).

Christopher J. Hoare argued the cause for respondent Vin-Rick Builders, LLC (Capehart & Scatchard, PA, attorneys; Christopher J. Hoare, on the brief).

PER CURIAM

Defendant Hutch Grove Enterprises (Hutch Grove) appeals from a May 24, 2024 order denying its motion for summary judgment and entering a

December 31, 2024 judgment in the amount of $2,158,736.56 in favor of plaintiff Anderson Rodrigues Guerini following a jury trial. We affirm.

I.

We briefly recite the facts from the record. On January 17, 2018, Guerini, an employee of Warrenville Plumbing (Warrenville), was working in a building owned by defendant Park Point Condominium Association (Park Point). Hutch Grove retained Warrenville to install plumbing, toilets, and bathtubs in condominium units it owned within the Park Point building. Park Point had hired Vin-Rick Builders, LLC (Vin-Rick) for separate construction work in the building.

Guerini alleged guardrails had been removed or were missing from a stairway he accessed while working. He claimed he fell on the stairs, while carrying a bathtub, and sustained serious injuries. Ultimately, Guerini alleged that either Hutch Grove or Vin-Rick was the general contractor for the construction project and responsible for site safety and the unsafe condition of the site which caused his injuries.

To provide an overall context for our opinion, we start with the well-established law of negligence. "[A] negligence cause of action requires the establishment of four elements: (1) a duty of care, (2) a breach of that duty, (3)

actual and proximate causation, and (4) damages." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (alteration in original) (quoting Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 594 (2013)). "The issues of whether a defendant owes a legal duty to another and the scope of that duty are generally questions of law for the court to decide." Robinson v. Vivirito, 217 N.J. 199, 208 (2014). The New Jersey Supreme "Court has 'carefully refrained from treating questions of duty in a conclusory fashion, recognizing that [w]hether a duty exists is ultimately a question of fairness.'" Padilla v. Young Il An, 257 N.J. 540, 548 (2024) (alteration in the original) (quoting Est. of Desir ex rel. Estiverne v. Vertus, 214 N.J. 303, 322 (2013)) (internal quotation marks omitted).

Further, "[d]etermining the scope of tort liability has traditionally been the responsibility of the courts." Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993). "[C]ourts must be careful not to 'create a broadly worded duty and . . . run the risk of unintentionally imposing liability in situations far beyond the parameters'" of the matter. Kubert v. Best, 432 N.J. Super. 495, 516 (App. Div. 2013) (omission in original). Thus, "[t]he scope of a duty is determined under the totality of the circumstances, and must be reasonable under those

circumstances." Ibid. (quoting J.S. v. R.T.H., 155 N.J. 330, 339 (1998)) (internal quotation marks omitted).

"Although the existence of a duty is a question of law, whether the duty was breached is a question of fact." Jerkins ex rel. Jerkins v. Anderson, 191 N.J. 285, 305 (2007). Whether there was a "breach of the duty, foreseeability and proximate cause" are issues "peculiarly within the competence of a jury." Anderson v. Sammy Redd & Assocs., 278 N.J. Super. 50, 56 (App. Div. 1994).

As to the duty of a general contractor, under "common law, a general contractor enjoyed broad immunity from liability for injuries to an employee of a subcontractor resulting from either the condition of the premises or the manner in which the hired work was performed." Tarabokia v. Structure Tone, 429 N.J. Super. 103, 112-13 (App. Div. 2012) (citing Muhammad v. N.J. Transit, 176 N.J. 185, 198-99 (2003)); see also Majestic Realty Assocs., Inc. v. Toti Contracting Co., 30 N.J. 425, 430-31 (1959) (same). The foundation for immunity rests on the premise "that a general contractor 'may assume that the independent contractor and [its] employees are sufficiently skilled to recognize the dangers associated with their task and adjust their methods accordingly to ensure their own safety.'" Tarabokia, 429 N.J. Super. at 113 (quoting Accardi

v. Enviro-Pak Sys. Co., 317 N.J. Super. 457, 463 (App. Div. 1999), and citing Muhammad, 176 N.J. at 199).

"[C]ertain exceptions to the general principle have come to be accepted." Ibid. "[A] general contractor may be liable for a subcontractor's negligence where he retains control of the manner and means of doing the work contracted for." Ibid. (citing Muhammad, 176 N.J. at 198). Also, "[a] general contractor may . . . be liable where he knowingly engages an incompetent subcontractor or where the work contracted for constitutes a nuisance per se, namely, is inherently dangerous." Ibid. (citing Majestic Realty, 30 N.J. at 431).

In Tarabokia, we noted the New Jersey Supreme Court had adopted a "more modern approach to the traditional common law rule." 429 N.J. Super. at 113 (citing Alloway v. Bradlees, Inc., 157 N.J. 221, 230 (1991)). In Alloway, the Court measured a general contractor's "duty" under "general negligence principles." 157 N.J. at 230. The Court held "[a] major consideration . . . is the foreseeability of the risk of injury." Ibid. "In addition, the determination of such a duty 'involves identifying, weighing, and balancing several factors--the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution.'" Ibid. (quoting Hopkins, 132 N.J. at 439). The Court stated "[t]he analysis leading to

the imposition of a duty of reasonable care is 'both fact-specific and principled,' and must satisfy 'an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy.'" Ibid. (quoting Hopkins, 132 N.J. at 439). The Court held "[t]he combination of these several factors--the foreseeability of harm, the relationship between the parties, and the opportunity and capacity to take corrective action--strongly supports the imposition of a duty of reasonable care on" the general contractor "to assure the safety of plaintiff[, an employee of a subcontractor,] on the work site as a matter of fairness and sound policy." Id. at 233.

In Alloway, the Court further held "in determining the scope of the duty owed by [the general contractor] to plaintiff and the possible breach of such a duty, the applicability of federal safety regulations, specifically OSHA regulations, [wa]s highly relevant."[1] Id. at 233-34. The Court found the "sound[] approach" "accords [an OSHA] violation relevance, but not dispositive weight, in the liability inquiry." Id. at 235. Thus, the Court "determine[d] that the violation of OSHA regulations without more does not constitute the basis for an independent or direct tort remedy." Id. at 236. "Nevertheless, OSHA

---

[1] Occupational Health and Safety Administration (OSHA), 29 U.S.C.A. §§ 651 to -678.

regulations are pertinent in determining the nature and extent of any duty of care." Ibid.

On appeal, Hutch Grove argues the court erred in denying it summary judgment on May 24, 2024. Further, it argues the December 31, 2024 jury verdict must be vacated because it did not own the common area where Guerini was injured. In addition, it contends even if it is considered a general contractor, the jury verdict must be vacated as it did not owe a duty to Guerini because the condition posed an "open and obvious hazard[]"; it was not aware of the "obviously dangerous manner" in which Guerini "was performing tasks"; it did not control the "manner or means" of Guerini's work; and it only conducted "[g]eneral supervisory oversight" of the construction project. We consider these arguments in turn.

## II.

### Summary Judgment

We first consider Hutch Grove's appeal of the May 24, 2024 order denying it summary judgment because it argued it was not the general contractor and, therefore, owed no duty to plaintiff. Vin-Rick and Hutch Grove both moved for summary judgment, denying they were the general contractor and contending the other was. In a decision placed on the record, the motion judge stated

Vin-Rick's merits brief only stated facts, and did not articulate "the legal standard or the controlling precedent" and, therefore, he denied its motion.

As to Hutch Grove's motion, Vin-Rick argued Guerini's "testimony reflects that . . . Hutch Grove was the general contractor"; "Hutch Grove came to the [s]ite several times to supervise work"; and Guerini "took directions from Hutch Grove." Guerini "recall[ed] that Hutch Grove . . . was responsible for site safety." In addition, Vin-Rick contended Hutch Grove "paid for the building permits"; "wrote a letter to the Union City Building Department, holding [it]self out as the general contractor" and "Union City dealt with [Hutch Grove] as . . . the general contractor."

In its oral decision, the motion judge stated "where there was sufficient evidence that could demonstrate that a property owner on a construction project was also functioning as the general contractor, . . . enough of a fact dispute existed to allow the jury to decide," (citing Costa v. Gaccione, 408 N.J. Super. 362, 374 (2009)). Further, the motion judge stated Park Point and Hutch Grove "may be alter egos of one another, may be one in the same." Thus, the judge determined "there exists a possibility that the liability could be shared or that one of them who purports not to be the general contractor, could be the general contractor."

9

The judge was "satisfied that . . . it [wa]s indeed possible, that . . . Hutch Grove could be absolved of liability by a jury." Nevertheless, "because the facts are clearly not so one-sided, so as to entitle . . . Hutch Grove to judgment as a matter of law," he denied Hutch Grove's motion for summary judgment.

We review orders granting summary judgment de novo, applying the same standard as the motion judge. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). Under that standard, we must "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)). "To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)). "An issue of fact is genuine only if . . . the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." R. 4:46-2(c). "To the extent that the grant or denial of summary judgment is based on an issue of law,

[appellate courts] owe no deference to an interpretation of law that flows from established facts." State v. Perini Corp., 221 N.J. 412, 425 (2015) (citing Town of Kearny v. Brandt, 214 N.J. 76, 92 (2013)). "[W]hen the evidence 'is so one-sided that one party must prevail as a matter of law,' the trial court should not hesitate to grant summary judgment." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995) (citation omitted) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

We conclude there was no error in denying Hutch Grove summary judgment. Drawing all reasonable inferences from the facts in favor of the non-moving parties, there was a dispute of material fact as to the identification of the general contractor and the nature of the roles that were undertaken and performed by Hutch Grove and Vin-Rick. Moreover, as a matter of law, under certain circumstances, a general contractor may be liable for the injuries sustained by the employees of independent or subcontractors on construction sites. See generally Muhammad, 176 N.J. at 198; Alloway, 157 N.J. at 233; Tarabokia, 429 N.J. Super. at 112-13; and Costa, 408 N.J. Super. at 374.

11

### III.

Trial

As to the trial, Hutch Grove's appeal focuses on the verdict sheet and the jury instructions. Hutch Grove concedes it did not object to the verdict sheet or jury instructions. Nevertheless, it argues that "because the jury instructions were of such a nature as to have been clearly capable of producing an unjust result" it is entitled to a new trial.

Hutch Grove contends "the court's instructions and verdict sheet incorrectly instructed the jury on the governing law and failed to define important terms for the jury." It argues "[s]imply acting 'as a general contractor' . . . does not automatically impose a duty of care to subcontractor employees, nor was 'general contractor' defined for the jury."[2] It asserts the instruction that it "had a duty if the jury found it was the 'general contractor'" misstated the law because a duty only arose if Guerini established it "retained or exercised control over how subcontractor employees performed their tasks[.]" Hutch Grove

---

[2] During oral argument before us, Hutch Grove stated the jury did not need to be instructed on the definition of general contractor and could understand what the term general contractor means. A "general contractor" has been defined as "[o]ne who contracts for the completion of an entire project, including purchasing all materials, hiring and paying subcontractors, and coordinating all the work." Black's Law Dictionary, 327 (7th ed. 1999).

argues the jury was not asked to determine if it "'participated in, actively interfered with, or exercised control over the manner and method of the work being performed at the time of the injury.'"

Our review of the trial starts with Hutch Grove's trial counsel's opening statement to the jury.[3]  Hutch Grove's counsel asked the jury:  "Who was the general contractor?   Because the general contractor would have the responsibility for determining all the[] safety things on site."  Counsel stated "the general contractor . . . would have been responsible for the conditions that you s[aw] and would be responsible for . . . the injuries that . . . [p]laintiff sustained."  Counsel asserted "Vin-Rick . . . w[as] the general contractor[] responsible for every condition on that property.  Responsible for all of the people that worked on that property, the work conditions, and any rules or regulations that w[ere] supposed to be in existence would be the responsibility of Vin-Rick. . . ."

Counsel suggested "it's a very, very simple trial."  Indeed, "there's no question that . . . Guerini was injured."  Thus, "[t]he question on why we're here today is to determine who is responsible for the injury.  Who was the general contractor?"

_____

[3] Hutch Grove has different counsel on appeal.

13

Counsel re-emphasized this strategy during his closing statement to the jury. He again framed the issue as: "[W]ho was the general contractor?" He stated the issue in the case was "[w]hether or not Vin-Rick . . . was the general contractor, whether or not Hutch Grove . . .was the general contractor during the time." Counsel reviewed the evidence and urged the jury to find that Vin-Rick, not Hutch Grove, was the general contractor. He contended "that the general contractor, which was Vin-Rick . . ., was responsible for the safety on the site."

Prior to providing the jury with the jury instructions, the trial transcript reveals the following colloquy:

> THE COURT:  . . . . Counsel, have I addressed all your concerns concerning the jury verdict sheet and the jury charges?
>
> . . . .
>
> [COUNSEL FOR HUTCH GROVE]:  Yes, Judge.
>
> . . . .
>
> THE COURT:  . . . [A]ny corrections, additions, [or] alterations?
>
> . . . .
>
> [COUNSEL FOR HUTCH GROVE]:  None -- none for me, Judge.

14                                                    A-1315-24

In instructing the jury the trial court stated:

> In this action, . . . Guerini, has the burden of establishing by a preponderance of the evidence all of the facts necessary to prove the following: number <u>one</u>, that . . . Hutch[ G]rove . . . in its role as a developer, negligently ensured to make sure a safety program was implemented on the construction project . . . and that this was a substantial factor in causing the January 17, 2018 accident and . . . Guerini's injuries; <u>two</u>, that . . . Hutch[ G]rove . . . was acting as a general contractor and negligently managed safety at the construction [project] . . . on January 17, 2018, the date of the accident, and this negligence was a substantial factor in causing the accident and . . . Guerini's injuries; <u>three</u>, . . . Vin-Rick . . ., was acting as a general contractor and negligently managed safety at the construction [project] . . . at the time of the January 17, 2018 [accident], and this negligence was a substantial factor in causing the accident and . . . Guerini's injuries.
>
> . . . .
>
> . . . . Now we have some standards in the construction industry . . . because this is a construction case. Some evidence has been produced in this case as to the standard of construction in the industry. Such evidence may be considered by you in determining whether . . . [d]efendants' negligence has been established.
>
> If you find that . . . [d]efendant did not comply with that standard, you may find the [d]efendant to have been negligent. However, the general custom of the industry, although evidential as of what is the reasonable standard in the industry, does not conclusively establish the care . . . [d]efendant was required to exercise in the performance of its operations.

15

Compliance with an industry standard is not necessarily conclusive as to the issue of negligence, and does not, of itself, absolve . . . [d]efendant from liability. So[,] if someone complied with something, it doesn't mean they're not negligent. If someone didn't comply with something, it also . . . doesn't mean that they were negligent. Okay?

. . . Defendant must still exercise reasonable care under all of the circumstances. And if you find that the prevailing practices in the industry do not comply with that standard, . . . [d]efendant may be found negligent by you notwithstanding compliance with the custom or standard of the industry. Do you need that again? No? Okay.

Violation of administrative regulation statutes as evidence of negligence. In this case, [Guerini] in support of the claim of negligence made, asserts that [d]efendant engaged in conduct that amounted to a violation of federal OSHA safety regulation.

Regulations are as follows: 29 CFR 9 1926.20(b)(1), it shall be the responsibility of the employer to initiate and maintain accident prevention programs as may be necessary to comply with this part; 29 CFR 1926.20(b)(2), accident prevention programs shall provide for frequent and regular inspections of the job sites, material and equipment to be made by competent persons designed by the employers; 29 CFR 16 1926.32(f), competent person means one who is capable of identifying existing and predictable hazards in the surroundings or work conditions which are unsanitary, hazardous[,] or dangerous to employees and who has authority or authorization to take prompt . . . corrective action to eliminate them; 29 CFR 1926.21(b)(2), the employer shall instruct each employee in the recognition and avoidance of unsafe

16

A-1315-24

conditions and the regulations applicable to his work environment to control or eliminate any hazards or other exposures to illness or injury.

The administrative regulation has set up a standard of conduct. If you find that [d]efendant has violated that standard of conduct, such violation is evidence to be considered by you in determining whether negligence, as I have defined that to you, has been established. You may find that such violation constituted negligence on the part of the [d]efendant. You may find that it did not constitute such negligence.

Your findings on this issue must be based on . . . such violation alone, but in the event there is other or additional evidence bearing upon the issue, you will consider such violation together with all such additional evidence in arriving at your ultimate decision as to . . . [d]efendants' negligence.

Now you have to find proximate cause. . . .

[(Emphasis added).]

The trial court provided the verdict sheet to the jury. The court explained:

The first question you will consider, was . . . Vin-Rick . . . acting as the general contractor on the [construction] project between the time that the guardrails were removed and the time of the accident? Yes, no and your vote. Go to question two. If . . . yes, you go to question two. If no, you go to question four.

Question two, was . . . Vin-Rick . . . negligent? Yes, no and your vote. If your answer is no, proceed to question four. If your answer is yes, you go to [question] three.

17

Was . . . Vin-Rick['s] . . . negligence a substantial factor in causing . . . Guerini's injuries and damages? Yes, no and vote.

[Question n]umber four, did Hutch[ G]rove . . . negligently fail to make sure a safety program was being implemented on the [construction] project? Yes, no and your vote. If yes, proceed to question five. If no, proceed to question six.

Question five, was . . . Hutch[ G]rove['s] . . . failure to make sure a safety program was implemented on the [construction] project a substantial cause and a substantial factor in causing . . . Guerini's injuries and damages? Yes, no and the vote.

[Question n]umber six, was . . . Hutch[ G]rove . . . negligent in its management of the safety as a general contractor on the [construction] project? Yes, no and vote. If yes, you go to question seven. If no, you go to question eight.

[Question number s]even, was . . . Hutch[ Grove's] . . . negligent management of safety on the [construction] project a substantial factor in causing . . . Guerini's injuries and damages? Yes, no and vote.

[Question n]umber eight, was . . . Guerini['s] -- negligence . . . a substantial factor in causing [his] injuries and damages? Yes, no and votes.

Now you go to question [number] nine. And it tells you, if you answered questions one, two[,] and three yes, you enter a percentage of negligence for Vin-Rick . . . . If you answered questions four or five yes or you answered question six and seven yes, enter a percentage of negligence for Hutch[ G]rove . . . . If you answered question eight and nine yes, enter a

A-1315-24

percentage of negligence for . . . Guerini who is . . . [p]laintiff.

And then you will see you have three lines and you will apportion the negligence. It has to equal [one] hundred percent. Okay? And if you answered yes, what sum of money will fairly compensate . . . Guerini, for his damages? There's an amount of money, a line for an amount of money and vote. All right.

The jury returned a verdict. The trial transcript reveals the following colloquy:

THE COURT: Okay. Was . . . Vin-Rick . . . oh, no. You . . . said no so go to question four. Did Hutch[ G]rove . . . negligently fail to make sure a safety program was being implemented on the [construction] project?

JURY FOREPERSON: Yes, seven-zero.

THE COURT: Okay. If yes, proceed to five. Was . . . Hutch[ G]rove['s] . . . failure to make sure a safety program was implemented on the [construction] project a substantial cause and a substantial factor . . . in causing . . . Guerini's injuries?

JURY FOREPERSON: Yes, seven-zero.

THE COURT: Okay. . . . Was . . . Hutch[ G]rove . . . negligent in its management of safety as a general contractor on the [construction] project?

JURY FOREPERSON: Yes, seven-zero.

THE COURT: . . . . If yes, go to seven. Was . . . Hutch[ Grove's] . . . negligent management of safety on

19

A-1315-24

the [construction] project a substantial factor in causing . . . Guerini's injuries and damages?

JURY FOREPERSON:  Yes, seven-zero.

THE COURT:  Okay.  Was . . . Guerini['s] . . . negligence a substantial factor in causing his injuries and damages?

JURY FOREPERSON:  Yes, six-one.

.  .  .  .

THE COURT:  -- did you . . . proportion the damages in terms of percentages?

JURY FOREPERSON: -- yes.

THE COURT: Okay.  So[, d]efendant, Vin-Rick . . . what percentage?

JURY FOREPERSON:  We left that blank per the instructions --

THE COURT:  For -- for -- zero.

JURY FOREPERSON:  -- because we answered no. . . .

THE COURT:  So that's zero.

JURY FOREPERSON:  Yup.

THE COURT:  Okay. . . . Hutch[ G]rove . . . ?

JURY FOREPERSON:  Ninety-five percent.

THE COURT:  Vote?

20

JURY FOREPERSON:  Six-one.

THE COURT:  And [Guerini]?

JURY FOREPERSON:  Five percent, six-one.

THE COURT:  Okay.  What sum of money will fairly compensate . . . Guerini, for his damages?

JURY FOREPERSON:  . . . [$]1,800,000, seven-zero.

"Our law has long recognized the critical importance of accurate and precise instructions to the jury.  'It is fundamental that [a]ppropriate and proper charges to a jury are essential for a fair trial.'"  Washington v. Perez, 219 N.J. 338, 350-51 (2014) (alteration in original) (quoting Velazquez v. Portadin, 163 N.J. 677, 688 (2000)) (internal quotation marks omitted).  The jury must be given "an explanation of the applicable legal principles and how they are to be applied in light of the parties' contentions and the evidence produced in the case."  Id. at 351 (quoting Viscik v. Fowler Equip. Co., 173 N.J. 1, 18 (2002)).  A "jury charge 'should set forth an understandable and clear exposition of the issues.'"  Ibid. (quoting Mogull v. CB Com. Real Estate Grp., Inc., 162 N.J. 449, 464 (2000)) (internal quotation marks omitted).  "The trial court's instructions to the jury, . . . serve as the jury's primary guide as it considers the [allegations] and the evidence."  State v. Cuff, 239 N.J. 321, 341 (2019).  "Indeed, '[w]ithout a proper jury charge, a jury will not have a proper road map to guide them in

21

their deliberations.'" Palmer v. Flagship Resort Dev. Corp., 481 N.J. Super. 465, 492 (App. Div. 2025) (alteration in original) (quoting Piech v. Layendecker, 456 N.J. Super. 367, 376 (App. Div. 2018)).

The rules of court provide for two types of verdicts: "a special verdict," R. 4:39-1; and "a general verdict." R. 4:39-2. "A special verdict is one in which the jury finds all the facts and the court renders a final decision based on those facts. A special verdict containing findings on all material factual issues in the case is rendered in lieu of a general verdict." Campione v. Soden, 150 N.J. 163, 178 (1997) (citation omitted).

"[T]he verdict sheet [i]s 'an essential component' of the trial court's 'road map' for the jury's deliberations." Cuff, 239 N.J. at 340 (quoting Galicia, 210 N.J. at 387). The Court has stated that "[j]urors are likely to refer, and refer often, to the directions on the verdict form." Ibid. (alteration in original) (quoting State v. Nelson, 173 N.J. 417, 449 (2002)). Therefore, "completeness and consistency in the preparation of verdict sheets" is encouraged. Ibid. (quoting State v. Gandhi, 201 N.J. 161, 198 (2010)).

Together, "[t]he verdict sheet, [and] . . . the jury charges, constitute[] the trial court's direction to the jury." Galicia, 210 N.J. at 386. Nevertheless, "[a] verdict sheet is intended for recordation of the jury's verdict and is not designed

22

to supplement oral jury instructions." Cuff, 239 N.J. at 341 (quoting Ghandi, 201 N.J. 196).

Under Rule 1:8-7(a):

> In Civil Cases. Either within the time provided by R[ule] 4:25-7 or thereafter but before the close of the evidence, as to issues not anticipated prior to trial, any party may submit written requests that the court instruct the jury on the law as set forth in the requests. The requests shall make specific reference to the Model Civil Jury Charges, if applicable, or to applicable law. Copies of the requests shall be provided to all parties at the time they are submitted to the court. The court shall, on the record, rule on the requests prior to closing arguments to the jury. A verbatim record shall be made of any charge conference the court holds. Objections to the instructions to the jury shall be in accordance with R[ule] 1:7-2.
>
> [(Boldface omitted).]

Rule 4:25-7(b) requires:

> [I]n jury trials, the parties shall also exchange and submit . . . (2) a list of proposed jury instructions pursuant to R[ule] 1:8-7, with specific reference either to the Model Civil Jury Charges, if applicable, or to applicable legal authority, and (3) a proposed jury verdict form that includes all possible verdicts the jury may return.
>
> [(Boldface omitted).]

In the absence of an objection to a verdict sheet or jury instructions, we review for plain error. See Cuff, 239 N.J. at 340 ("When the party alleging error

23

failed to object at trial to the verdict sheet, [appellate c]ourt[s] review[ of] the verdict sheet [is] . . . plain error"); see also Willner v. Vertical Reality, Inc., 235 N.J. 65, 79 (2018) ("[T]he failure to object to a jury charge instruction requires review under the plain error standard." (quoting State v. Wakefield, 190 N.J. 397, 473 (2007))). The "standard requires that we determine whether the error asserted 'is of such a nature as to have been clearly capable of producing an unjust result.'" Cuff, 239 N.J. at 340 (quoting R. 2:10-2).

"The purpose of the rule requiring objection to the charge is to alert the trial judge to the asserted error and thus afford him [or her] an opportunity of correcting it before the jury retires to deliberate." Nesta v. Meyer, 100 N.J. Super. 434, 446 (App. Div. 1968). A counsel's "trial strategy" cannot "permit[ it] to overlook alleged error in the charge as given to gamble on a favorable verdict and, upon the coming in of an adverse one, seek a 'second bite of the apple' on the basis of plain error." Ibid. (quoting Lippman v. Ostrum, 22 N.J. 14, 26 (1956)).

Additionally, "[m]istakes at trial are subject to the invited-error doctrine. Under that settled principle of law, trial errors that 'were induced, encouraged or acquiesced in or consented to by defense counsel ordinarily are not a basis for reversal on appeal. . . .'" State v. A.R., 213 N.J. 542, 561 (2013) (omission

in original) (quoting State v. Corsaro, 107 N.J. 339, 345 (1987)) (internal quotation marks omitted).  Thus, "if a party has 'invited' the error, he is barred from raising an objection for the first time on appeal."  Ibid. (quoting N.J. Div. of Youth & Fam. Servs. v. M.C. III, 201 N.J. 328, 342 (2010)).

The doctrine recognizes "the common-sense notion that a 'disappointed litigant' cannot argue on appeal that a prior ruling was erroneous 'when that party urged the lower court to adopt the proposition now alleged to be error.'"  Ibid. (quoting M.C. III, 201 N.J. at 340) (internal quotation marks omitted).  The "principle is grounded in 'considerations of fairness[,]' and is meant to 'prevent defendants from manipulating the system[.]'"  A.R., 213 N.J. at 561 (first alteration in original) (citation omitted) (first quoting M.C. III, 201 N.J. at 340; and then quoting State v. Jenkins, 178 N.J. 347, 359 (2004)) (internal quotation marks omitted).  "[W]hen a defendant later claims that a trial court was mistaken for allowing him to pursue a chosen strategy . . . his claim may be barred by the invited-error doctrine."  State v. Williams, 219 N.J. 89, 100 (2014) (citing A.R., 213 N.J. at 561-62; and M.C. III, 201 N.J. at 340).

Our analysis starts with the jury's factual finding that Hutch Grove was the general contractor.  Given our well-established law regarding general contractor liability, the next questions are legal ones:  did Hutch Grove have a

duty and what was the scope of that duty? The trial judge determined—and the parties accepted, without objection—Hutch Grove owed a duty and the scope of that duty when the judge advised the jury that if it found Hutch Grove was the general contractor, without more, it could find it liable for "negligently managed safety" and/or that it "negligently fail[ed] to make sure a safety program was being implemented." Under the law regarding general contractor liability, this direction was facially incorrect in the absence of the jury making further factual findings—perhaps through special verdict sheets—for the trial judge to be in a position to determine duty and scope. However, Hutch Grove's failure to object effectively precluded the judge from exploring these issues further.

Because we conclude Hutch Grove's trial strategy permitted the instructions to the jury as given by the judge, it cannot rely on plain error and is barred by the invited error doctrine. We are satisfied Hutch Grove assented to the jury instructions and verdict sheet because these directions mirrored its trial strategy. Hutch Grove sought to persuade the jury that Vin-Rick was the general contractor, responsible for the safety of the site, and liable for any resultant injury that was caused by the failure of that safety plan. As counsel emphasized during his opening statement, the case was "simple." However, the jury was not persuaded by Hutch Grove's trial strategy, and instead, found it was the general

26

contractor, responsible for the safety of the site, and liable to Guerini for his injuries and damages. Hutch Grove is not entitled to another trial or a "second bite of the apple" because of its failed trial strategy. See Nesta, 100 N.J. Super. at 446. Because Hutch Grove's trial strategy failed, we are unconvinced it is entitled to relief under the plain error standard and is barred by invited error.

We add, although not on appeal, that in a September 24, 2024 order, a second judge had denied Vin-Rick's second motion for summary judgment concerning its status as the general contractor. The motion was opposed by Hutch Grove. In a detailed twenty-one-page decision accompanying the order, the judge reviewed the law regarding negligence and general contractor liability. Among other cases, the judge relied on and cited Muhammad, Alloway, Tarabokia, and Costa. The judge noted "[w]hile the question of whether a duty exists is a question of law, the first factual question focuses upon the status of the parties." The judge concluded "there is a general question of material fact as to whether Vin-Rick was acting as a general contractor" and that determination was a "necessary factual predicate before the court can determine as a matter of law what duty is owed."

The September 2024 order and cited decisional law firmly establishes that the parties were fully aware of the heightened analysis regarding general

contractor liability. It would strain credibility to conclude otherwise. This observation bolsters our conclusion that Hutch Grove accepted the jury instructions and verdict sheet because they mirrored its trial strategy. Under these circumstances, given that strategy, it cannot find relief under plain error and is barred by invited error.

To the extent we have not addressed any of Hutch Grove's remaining arguments, it is because they are without sufficient merit to warrant a discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

_M.C. Harley_

Clerk of the Appellate Division